IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Mario Ramos Hinojos, Jr. a/k/a Mario Hinojos, ) ) ) | C.A. No.: 2:13-cv-01900-JFA-WWD |
| Plaintiff, ) ) | **Report and Recommendation** |
| vs. ) ) | |
| William Byars, Director; ) Michael McCall, Warden; ) Anthony Padula, Warden; ) Mr. Davis, Deputy Warden; and ) Mrs. Eastridge, Mailroom Staff, ) ) Defendants. ) _____) | |

The plaintiff, Mario Ramos Hinojos, Jr. a/k/a Mario Hinojos ("Hinojos"), is a state prisoner proceeding pro se, and in forma pauperis, who, during the relevant time period and presently was housed in the Special Management Unit ("SMU") at Lee Correctional Institution ("LCI") in Bishopville, South Carolina. On July 11, 2013, he brought this civil rights action pursuant to Title 42, United States Code, Section 1983[1].

This matter is before the Court for a report and recommendation on a Motion for Summary Judgment filed by the defendants on December 11, 2013, (Dkt. No. 54) as well as the plaintiff's three motions "to submit into evidence" (Dkt. Nos. 30, 36, 58), two

---

[1] Section 1983, titled a civil action for deprivation of rights reads in relevant portion: Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.
42 U.S.C. §1983

1

motions for preliminary injunctions (Dct. Nos. 39, 59), and motion to amend the complaint to add additional parties (Dkt. No. 50).  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1) and Local Rule 73.02(B)(2)(e), D.S.C., all pretrial matters in cases involving pro se litigants are referred to a United States Magistrate for consideration.

The defendants' motion for summary judgment included the plaintiff's authenticated medical records and the sworn affidavits of Gwendolyn Stokes, the Health Care Authority at LCI, Defendant Willie E. Davis, who oversees the operation of the SMU, Defendant Debra Eastridge, Postal Director at LCI, and Angela Smith, the Administrative Assistant to Deputy Warden Davis.

On December 11, 2013, the plaintiff was provided copies of the defendants' motion and exhibits and was given an explanation of dismissal and summary judgment procedure as well as pertinent extracts from Rules 12 and 56 of the Federal Rules of Civil Procedure similar to that required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975).

On December 19, 2013, Plaintiff filed a motion denominated "Motion to submit into evidence" with 22 pages of exhibits.  On January 10, 2014, Plaintiff filed his opposition to the summary judgment motion with exhibits totaling 90 pages.  Thereafter, on January 21, 2014, the defendants filed a reply to the plaintiff's opposition to their dispositive motion.  Next, Hinojos filed a demand for a jury trial on January 31, 2014, a motion to appoint counsel on March 13, 2014[2], which motion was denied on March 18,

---

[2] This is his second such motion (Dkt. No. 23) and it was denied on August 29, 2013 (Dkt. No. 25).  A review of the docket reveals that the plaintiff has filed many such duplicitous motions.

2014. Finally on May 8, 2014, Hinojos filed a pleading denominated "Notice to the Court and Affidavit" in which he again complained that he was not allowed sufficient envelopes to litigate his various cases and requested the address of the United States Supreme Court. On May 9, 2014, Hinojos was provided the requested address. Hence, it appears consideration of the motion is appropriate.

The defendants' motion for summary judgment will be considered [3] first as it appears to be dispositive of all other outstanding motions.

### Plaintiff's allegations

In his complaint[4], Hinojos alleges, that, beginning about August 2012, Defendant Warden McCall eliminated the category of staff dedicated to the SMU, where he has been confined for three years following his attempted escape, so that those inmates[5] must now wait days, and even weeks, without a shower or recreation. As a result, Plaintiff has been required to incur costs for medical visits for skin care.

Further, Warden McCall and Deputy Warden Davis provide only three ounces of bar soap, twice per month, and it does not last long enough. He is provided liquid soap for showers. Similarly, Plaintiff is given eight ounces of cleaning fluid once a week

---

[3] All verified exhibits submitted by the plaintiff in his various pleadings have been considered in reviewing the motion for summary judgment. Therefore, Plaintiff's motions to "submit into evidence" has been granted. (Doc. 30, 36, 58).

[4] In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir.1991). Plaintiff has filed a verified Complaint. Therefore, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case.

[5] To the extent Hinojos is attempting to litigate claims of other inmates, he lacks standing to do so. Inmates v. Owens, 561 F.2d 560, 562-63 (4th Cir. 1977).

which amount is inadequate for cleaning and disinfecting his cell and may lead to an infection. Plaintiff noted that "staph" infections are common in the SMU and can be fatal.

Plaintiff complains of a First Amendment violation because, as an SMU inmate, he is prohibited from receiving any publications and that Warden McCall enacted this policy.

Lastly, Plaintiff asserts that he has constitutionally insufficient access to the courts. Hinojos avers that he is allowed to request only three cases per week from the law library and two hours of computer access to legal materials per month. His PCR case challenging his murder conviction was dismissed with prejudice because "of his inability to properly research the law." (Complaint at 7).

As a result of SMU policies restricting mail, and Plaintiff's canteen restrictions, Plaintiff can obtain only two stamped mail envelopes per month, which severely limits his correspondence. These practices further restrict his court access.

Defendant Correctional Officer Eastridge works in the prison mail room and has, at times, opened Plaintiff's incoming mail, including his legal mail, outside of his presence. Additionally, she returns mail from "legal organizations that assist indigent litigants which also restricts his access to the courts."

Warden McCall "condones all of these actions" and Defendant S.C.D.C. Director Byars was notified of these delicts on January 13, 2013, but has not acted to rectify the situation. Hinojos believes that grievances are being intentionally delayed for six to seven months because of insufficient staffing. In short, Defendant McCall has acted to make the SMU as "inhumane," "barbaric," and "uninhabitable" as possible in order to

4

enforce discipline.

Plaintiff seeks one hundred forty one thousand dollars ($141,000.00) in damages[6], equitable relief, and a court order bringing criminal charges against Defendant Eastridge[7].

## Summary Judgment Standard

Hinojos appears pro se in this case. Federal district courts are charged with liberally construing complaints filed by pro se litigants to allow the development of a potentially meritorious case. See Haines v. Kerner, 404 U.S. 519, 521 (1972). The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a cognizable claim, nor does it mean the court can assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R.

---

[6] As for the remaining individual defendants, as public employees they are generally subject to suit for damages under § 1983 in their individual capacities. Will v. Michigan Department of State Police, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); Hafer v. Melo, 502 U.S. 21, 112 S.Ct. 358, 365, 116 L.Ed.2d 301 (1991); Goodmon v. Rockefeller, 947 F.2d 1186 (4th Cir.1991); Inmates v. Owens, 561 F.2d 560 (4th Cir.1977). Construed liberally, Plaintiff is asserting his damages claims against these defendants in their individual capacities.

[7] With respect to Plaintiff's demand that Eastridge be charged with a violation of a criminal law, Plaintiff cannot obtain criminal charges against a defendant through this lawsuit. See, Linda R.S. v. Richard D., 410 U.S. 614, 619, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973) [a private citizen does not have judicially cognizable interest in the prosecution or non-prosecution of another person]; Collins v. Palczewski, 841 F.Supp. 333, 340 (D.Nev.1993) ["Long ago the courts of these United States established that 'criminal statutes cannot be enforced by civil actions' "].  Hence, since Plaintiff does not have a judicially cognizable interest in the criminal prosecution of another person, he lacks standing to even raise such a claim. Linda R.S. v. Richard D., 410 U.S. at 619.

Civ. P. 56(a).  "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" Id. (quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)); see also, Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).

## DISCUSSION

A review of the record and relevant case law reveals that the Defendants' Motion for Summary Judgment should be granted and this matter ended.

### Conditions of Confinement

With regard to Plaintiff's allegations that the conditions within the SMU are generally constitutionally inadequate, Plaintiff fails to present evidence that the conditions therein, standing alone, caused him cruel and unusual punishment in violation of the Eighth Amendment to the Constitution.

"[E]xtreme deprivations are required to make out a conditions-of-confinement claim.... Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Strickler v. Waters, 989 F.2d 1375, 1380 fn. 3 (4th Cir. 1993) (internal quotations omitted).

"[I]n order to withstand summary judgment on an Eighth Amendment challenge

6

to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." Strickler at 1381, Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995). "The Eighth Amendment does not prohibit cruel and unusual prison conditions; it prohibits cruel and unusual punishments. If a prisoner has not suffered serious or significant physical or mental injury as a result of the challenged condition, he simply has not been subjected to cruel and unusual punishment... ." Strickler at 1381.

In Strickler, an inmate brought a conditions of confinement claim against a sheriff and city for violation of his constitutional rights during a six month confinement at a city jail. He essentially claimed deprivations caused by overcrowding, double bunking, mattresses on the floor of the cell, limited exercise opportunities, and inadequate ventilation and air conditioning. See Strickler at 1378-79. The Fourth Circuit affirmed the District Court's grant of summary judgment, stating, "[t]hough such conditions could rise to the level of constitutional violations were they to produce serious deprivations of identifiable human needs, Strickler has come forward with no evidence that he has sustained any serious or significant physical or emotional injury as a result of these conditions." Id. at 1381. The Court went on to say, "(t)his is not the kind of *extraordinary* case of a palpable deprivation of the minimal requirements of civilized existence in which an inference of serious injury might be reasonable." Id. at 1381-82 (emphasis added).

In In re: Long Term Administrative Segregation of Inmates Designated as Five Percenters, 174 F.3d 464 (4th Cir. 1999) for example, the Fourth Circuit held that ordering a group of inmates to long-term segregated confinement did not violate their

7

Eighth Amendment rights because their alleged damages of depression, "great stress" causing them "great emotional and physical suffering" did not constitute the "extreme deprivation" required to make out a conditions-of-confinement claim. In re: Long Term, at 472.

Hinojos' particular claims will be reviewed in seriatim.

## I. Showers

Hinojos alleged that in SMU, Defendants failed to provide him with adequate access to showers. He asserts that this deprivation subjected him to unsanitary conditions and amounted to cruel and unusual punishment in violation of the Eighth Amendment.

The law is clear that bathing opportunities may be severely reduced or curtailed without violating an inmate's Eighth Amendment rights. See, e.g., Shakka v. Smith, 71 F.3d 162, 168 (4th Cir. 1995) (inmate's constitutional rights were not violated where he was not given access to shower for three days after having feces thrown on him by fellow inmates because he had access to water with which to clean himself); Davenport v. DeRobertis, 844 F.2d 1310, 1316-17 (7th Cir. Cir.), cert. denied, 488 U.S. 908 (1988) (holding that restricting inmates in segregated confinement to one shower per week did not violate their constitutional rights).

The facts of this case are not materially distinguishable from Davenport and other cases in which the opportunities to shower for inmates in segregated confinement were severely reduced. Here, Hinojos has a sink with water in his cell he can use to clean himself and he is allowed showers, albeit not as often as desired.

Further, reduction in the number of showers resulted from a safety and security

issue associated with transporting the inmates to and from the shower. See Affidavit of Willie D. Davis at ¶ 3. Even if this was a prison regulation impinging on inmates' constitutional rights, it "is valid if it is reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261(1987). Such a deferential standard is necessary, the Court explained,

> "if 'prison administrators ..., and not the courts, [are] to make the difficult judgments concerning institutional operations.' Subjecting the day-to-day judgments of prison officials to an inflexible strict scrutiny analysis would seriously hamper their ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration."

Id. (citation omitted), quoting Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 128, 97 S.Ct. 2532, 2539 (1977). It is clearly established that there is a compelling interest in assuring the security of prisons; whenever that need conflicts with the right of prisoners, the latter must yield. See, e.g., Crowe v. Leeke, 550 F.2d 184 (4th Cir. 1977).

Therefore, it appears that Plaintiff's constitutional rights were not violated by his restricted shower opportunities.

## II. Access to Adequate Cleaning Supplies

Similarly, Hinojos alleges in his Complaint that he was forced to endure unconstitutional conditions of confinement while housed in SMU at LCI that included the denial of access to adequate cleaning supplies to clean himself and/or his living area. See Complaint, Section IV. However, his claims are not sufficient to establish that he was deprived of the minimal civilized measures of human necessities in such a palpable way that injury should be inferred, nor has he come forward with sufficient evidence that he has sustained any serious or significant physical or emotional injury as a result of the

conditions at issue. Strickler at 1381.

In his Complaint, Hinojos suggests that his alleged lack of adequate cleaning supplies could cause diseases or infections, such as a "staph" infection. However, he fails to show that he has actually contracted any of the diseases that he alleges could be caused by his lack of cleaning supplies. Likewise Hinojos' medical records demonstrated no such injury. See, Aff. of Gwendolyn Stokes, Health Care Authority at L.C.I. at ¶7.

Plaintiff has not demonstrated that the alleged inadequate quantity of cleaning supplies rose to the level of a constitutional rights violation; he has not shown a constitutional injury that was caused by the conditions of his cell. Therefore, Plaintiff has not demonstrated a genuine issue of material fact precluding summary judgment.

### III. Recreation and Exercise

Plaintiff has also alleged that his constitutional rights were violated because recreation was denied while he was housed in SMU. Read liberally, this is construed to be a claim for lack of exercise.

The Fourth Circuit has held that in order to sustain a § 1983 claim for lack of exercise, a plaintiff must produce evidence "that he has sustained a serious or significant physical or emotional injury as a result of these conditions." Strickler v. Waters, 989 F.2d 1375, 1381 (4th Cir. 1993). Furthermore, the Fourth Circuit has distinguished exercise from recreation. Strickler, 989 F.2d at 1381 n.7 ("We, like the district court, consider whether Strickler was denied exercise. Notably, however, as the district court emphasized, Strickler does not even specifically allege that he was

10

deprived of such a right [but instead claimed he was being denied 'adequate recreation'].").

Exercise is the act of physical activity or exertion. Recreation is an activity designed to provide relaxation or enjoyment. "Lack of exercise may rise to a constitutional violation in certain limited circumstances 'where movement is denied and muscles are allowed to atrophy [and] the health of the individual is threatened.'" Ramos, 130 F.3d 754, 763 (7th Cir. 1997) (quoting French v. Owens, 777 F.2d 1250, 1255 (7th Cir. 1985)). Courts have held that there is no need to provide opportunities for exercise outside of one's cell if a person is capable of performing exercise within his or her cell. Id. at 764 (holding that no constitutional violation had occurred when inmate was confined to his cell without exercise for 70 days, but could have conducted exercises such as push-ups, sit-ups, and jogging in place within his cell).

Therefore, it appears that while there is a constitutional right to be provided with some sort of minimal opportunity to exercise, there is no constitutional right to "recreation." Notably, here, Plaintiff claims "recreation" was discontinued while in SMU and makes no claim that he was deprived of an opportunity to exercise. As with his previous claim, there is no medical evidence, and he does not claim, that his health deteriorated due to a lack of exercise. This claim is subject to judgment as a matter of law.

## IV. Access to outside media

Plaintiff complains that, as an SMU inmate, he is prohibited from receiving any publications because Warden McCall enacted this policy. Plaintiff claims he has been

11

refused access to media and worldly events at LCI in SMU, including being denied the use of newspapers, legal publications, magazines and other reading materials. He alleges these deprivations amount to a violation of his constitutional rights.

The SCDC policy denying publications to SMU inmates has been held to be rationally related to legitimate and neutral governmental objectives. Koon v. Ozmint, 2007 WL 1486067 (D.S.C. 2007) (finding the policy creates an incentive or motivation for SMU inmates to change their behavior, reduces a potential fire hazard in the SMU, reduces the places an SMU inmate can hide drugs and weapons, and deters improper uses of books, magazines, and newspapers to cover cell windows to conceal activity within their cells, jam the locks to prevent entry into their cell, and stop up toilets). See also Corey v. Reich, 2004 WL 3090234 (D.S.C. March 9, 2004). Accordingly, the defendants should be granted summary judgment on this claim.

V. Access to Courts

Plaintiff alleges that he is being denied access to the courts due to limited access to the prison's law computer and copies of cases, failure of staff to Shepardize cases for him, too few envelopes provided to him to send legal mail, too few sheets of paper, his inability to receive publications from organizations which purport to help incarcerated persons, and the fact that there were instances where his legal mail was opened prior to its delivery to him. He claims he lost his post conviction relief case because of these restrictions, that he is not able to properly litigate in front of the Administrative Law Judge in two unspecified cases, as well as in the instant matter.

In Bounds v. Smith, 430 U.S. 817 (1978), the Supreme Court defined access to

the courts for prisoners as "meaningful access." <u>Bounds</u>, 430 U.S. at 830. This was interpreted to require institutions to provide access to a law library or legal assistance in filing lawsuits. However, in <u>Lewis v. Casey</u>, 518 U.S. 343 (1996), the Court indicated that "<u>Bounds</u> established no such right . . . . The right that <u>Bounds</u> acknowledged was the (already well-established) right of access to the courts." 518 U.S. at 350. The <u>Casey</u> decision distanced itself from the more expansive <u>Bounds</u> decision, finding that <u>Bounds</u> "appear[s] to suggest that the State must enable the prisoner to discover grievances, and to litigate effectively once in court. . . . These elaborations upon the right of access to the courts have no antecedent in our pre-<u>Bounds</u> cases, and we now disclaim them." <u>Casey</u>, 518 U.S. at 343. The <u>Casey</u> court explained:

> In other words, <u>Bounds</u> does not guarantee inmates the wherewithall to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

<u>Id</u>. at 355. The "touchstone," according to <u>Casey</u>, is that inmates be afforded "a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement." <u>Id</u>. at 356.

A prisoner claiming a <u>Bounds</u> violation must show: (i) that shortcomings in the prison's library or legal assistance program hindered his efforts to attack his sentence, directly or collaterally, or to challenge the conditions of his confinement; and (ii) that he was actually injured as a result of these shortcomings. <u>Lewis</u>, 518 U.S. at 351-53, 355.

13

Even if the court were to assume that Hinojos had met the first prong of the Bounds test, this claim still fails because he has not shown that he was injured by it. The filings in this case and the PCR action evidence that Plaintiff has meaningful access to the court. Plaintiff filed an order indicating that his PCR case was dismissed as untimely. There is no evidence that the PCR court would have granted a time-barred petition if he had received more access to cases, envelopes and the like. See, e.g., Sheid v. U.S. Marshal Serv., No. 08-cv-03295, 2009 WL 1750379, at *10 (S.D. Tex. June 17, 2009) (holding that inmate failed to state a claim for denial of access to the courts where prison officials allegedly hindered his ability to file a time-barred federal habeas petition).

Likewise, in the instant action, a review of the record shows that Plaintiff has filed a plethora of motions, oppositions, and hundreds of pages of exhibits. "Actual injury cannot be established merely by conclusory statements that the inmate would have fared better in litigation had he or she had more or better access to legal research materials[,]" citing Jones v. Lexington County Detention Center, 586 F. Supp.2d 444, 448 (D.S.C. 2008).

In sum, Plaintiff has not demonstrated an injury within the meaning of Bounds and this is fatal to his claim.

## CONCLUSION

Accordingly, for the aforementioned reasons, it is recommended that Plaintiff's motions to "submit into evidence" (Doc. 30,36, 58) be granted, that Defendants' motion for summary judgement be granted (Doc. 54), all other outstanding motions be denied

as moot, and this matter ended.

          **IT IS SO RECOMMENDED**.

*/s/ Wallace W. Dixon*
WALLACE W. DIXON
UNITED STATES MAGISTRATE JUDGE

June 23, 2014
Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).